UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JIM MIDDLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:14-CV-162-HAI |
| v. ) | |
| ) | MEMORANDUM OPINION & ORDER |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*** *** *** ***

On December 29, 2010, Plaintiff Jim Middleton filed a protective Title II application for disability insurance benefits.[1]  D.E. 16-1 at 162, 183.  He dates the beginning of his disability period to November 11, 2009.  *Id*. at 183.  His "date last insured" was December 31, 2012.  *Id*.  Middleton claims he is disabled due to "complicated black lung," back problems, stomach problems, hernia, and head and neck pain.  *Id*. at 187.  The Social Security Administration denied Middleton's claims initially and upon reconsideration.  *Id*. at 96, 101.  Then, on December 5, 2012, upon Middleton's request, Administrative Law Judge ("ALJ") Bonnie Kittinger conducted an administrative hearing.  *Id*. at 28.  The ALJ heard testimony from Middleton and impartial vocational expert ("VE") William Ellis.  *Id*. at 29.

Middleton was forty-three years old at the alleged onset date.  D.E. 16-1 at 162.  He has an eighth-grade education.  *Id*. at 188.  Middleton has past relevant work experience as a "roof bolter" working in underground coal mines.  *Id*.  The VE testified that such work exceeds his

---

[1] This is Middleton's second application for disability benefits.  His first was filed on August 15, 2008, and denied by Administrative Law Judge Donald Rising on November 10, 2009.  Middleton's current application identifies his onset date as November 11, 2009—the day after Judge Rising's adverse decision.  The Appeals Council affirmed the first decision on January 7, 2011, and Middleton did not seek administrative review.  The current matter is not a request to reopen Middleton's prior application.  *See* D.E. 16-1 at 13; D.E. 21 at 1 n.1.

residual functional capacity ("RFC"), and the ALJ accepted that testimony. *Id*. at 21. Although the ALJ found Middleton was "unable to perform any past relevant work," *id*., the ALJ also found he had the RFC to perform medium work, *id*. at 17, and that through the date he was last insured "there were jobs that existed in significant numbers in the national economy" that Middleton could perform, *id*. at 22. Accordingly, the ALJ found Middleton was "not under a disability" between the alleged onset date and the date last insured. *Id*. at 22.

Middleton now brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying his application for disability insurance benefits. Both parties consented to the referral of this matter to a magistrate judge. D.E. 4 & 14. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 15. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 20) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 21).

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case. *See* D.E. 16-1 at 14-15.

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id*. at 474 (internal citations omitted).

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Middleton "did not engage in substantial gainful activity during the period from his alleged onset date of November 11, 2009 through his date last insured of December 31, 2012." D.E. 16-1 at 15.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Middleton did suffer significant impairment in the form of "coal worker's pneumoconiosis and low back pain." D.E. 16-1 at 16.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Middleton failed to meet this standard. D.E. 16-1 at 17. Middleton argues the ALJ erred at this step.

In denying Middleton's earlier application for disability benefits, Judge Rising determined that Middleton was capable of "performing a full range at any exertional level that required no exposure to workplace hazards or pulmonary irritants such as dust, smoke, or temperature and humidity extremes." D.E. 16-1 at 17. The ALJ in this case recognized that, "absent evidence of improvement or deterioration in a claimant's condition," she was bound by Judge Rising's findings. *Id.* (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997)). Here, the ALJ pointed to "new and material evidence" of consequential change in Middleton's condition since Judge Rising issued his opinion. *Id.* The ALJ therefore decided not to adopt Judge Rising's complete assessment. Instead, the ALJ found Middleton to be "limited

3

to medium level work." The ALJ added a new restriction to "accommodate his slight hearing deficiency," and added "poor ventilation as a qualifying pulmonary irritant." *Id*. at 17-18.

The ALJ explained that she must answer two questions at step three. The first question is whether Middleton had an underlying medically determinable impairment. D.E. 16-1 at 18. The ALJ found that his "coal worker's pneumoconiosis and low back pain" were severe impairments. *Id*. at 16. The second question concerns how severely the "intensity, persistence, and limiting effects" of the impairments limit the claimant's functioning. *Id*. at 18. At this point in the analysis, the ALJ found that Middleton was exaggerating his symptoms and that his treating physicians' bleak functional assessments were contradicted by their actual treatment records. *Id*. at 18-21. These are the findings that Middleton claims were erroneous. D.E. 20-1 at 9-13

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's RFC, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e). The ALJ determined that Plaintiff had the RFC to "perform medium work as defined in 20 C.F.R. 204.1567(c) that does not require fine hearing capability or exposure to pulmonary irritants, poor ventilation, and hazards such as dangerous machinery and unprotected heights." D.E. 16-1 at 17. Middleton argues that the ALJ's RFC calculation underestimates his actual disability.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of his residual functional capacity), he is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Middleton met this disability standard— he was unable to do his previous work as "a coal company laborer." D.E. 16-1 at 21.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is

4

not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Middleton was not disabled at this step. D.E. 16-1 at 22. The ALJ explained that she asked the VE at the hearing "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id*. She accepted the VE's testimony that Middleton could find work as, for example, a production worker, hand packer, or inspector/tester, for which there were 13,900 such jobs in Kentucky. *Id*. Middleton was therefore "not disabled" as defined by the regulations. *Id*.

Accordingly, on January 24, 2013, the ALJ issued an unfavorable decision, finding that Middleton was not disabled, and was therefore ineligible for disability insurance benefits. D.E. 16-1 at 23. The Appeals Council declined to review the ALJ's decision on May 13, 2014. *Id*. at 4.

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within

which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[3] It is within the province of the ALJ, rather than the reviewing court, to evaluate

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures

6

the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

### III. Claimant's Arguments

According to Middleton, the ALJ "failed to properly consider the medical evidence in the record." D.E. 20-1 at 9. Middleton faults the ALJ for "disregarding the opinion[s] of Dr. Hoskins, Dr. Rhoads, and Dr. Dye," *id*. at 10, and for failing to "justify her rational[e] for disregarding" these opinions by the treating physicians, *id*. at 11. Middleton accuses the ALJ of "selective inclusion of only portions of the pertinent evidence which cast the claimant in [an un]favorable light." *Id*. at 12. Accordingly, Middleton argues that the ALJ's RFC determination is inaccurate and "not supported by substantial evidence." *Id*. at 13. Middleton also faults the ALJ for "improperly rejecting [his] credibility." *Id*. at 11.

In passing, Middleton also states that the ALJ's decision "does not comply with the procedural requirements of the regulations." D.E. 20-1 at 13. But Middleton does not identify which procedures the ALJ allegedly violated. "Issues averted to in a perfunctory manner and without developed argumentation are deemed waived." *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 782 F.3d 260, 264 n.2 (6th Cir. 2015), *cert. denied sub nom. Chattanooga-Hamilton Cnty. Hosp. Auth. v. U.S. ex rel. Whipple*, No. 15-96, 2015 WL 4468044 (U.S. Oct. 5, 2015). It is not a reviewing court's job to craft the petitioner's argument for him. *United States*

---

you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

*v. Stewart*, 729 F.3d 517, 528 (6th Cir. 2013), *reh'g denied* (Sept. 19, 2013), *cert. denied*, 134 S. Ct. 1044 (2014). Because Middleton does not identify which "procedural requirements" the ALJ allegedly failed to follow, this argument is undeveloped and therefore waived.

## IV. The ALJ's Credibility Findings and Weighing of the Record Were Not Unsupported by Substantial Evidence

The ALJ found that although Middleton's "medically determinable impairments could reasonably cause" the symptoms he alleged, his "statements regarding their intensity, frequency and limiting effects are not fully credible." D.E. 16-1 at 18. The ALJ noted that Middleton was "obviously having some physical problems" and was "generally credible in his testimony." *Id*. However, "the objective medical evidence," the ALJ found, did not support a finding of total disability. *Id*.

First, the ALJ explained that the details of Middleton's "largely independent married lifestyle . . . contradict the notion of total disability." *Id*. The record showed that Middleton could effectively care for himself, drive without restriction, cook, shop, and perform household chores. *Id*. Middleton even injured himself eight months after his alleged onset date by falling off a ladder. *Id*. at 19, 262. This level of physical activity, the ALJ explained, was "categorically inconsistent with the sedentary existence to which the claimant testified." *Id*. at 18.

Second, the ALJ explained her reasons for finding that Middleton's medical treatment records did not support his "apparent perceptions of his condition." D.E. 16-1 at 19. In the records, the doctors "commonly observed" his lack of acute distress or, at times, any distress whatsoever. *Id*. Middleton was found on multiple occasions to have a full range of motion (or mildly- to moderately-reduced motion) in his lower back, as well as good air movement in his

8

lungs. *Id*. The ALJ provided multiple citations to the medical records to support this observation. *Id*. The ALJ found Middleton's imaging studies "unremarkable." *Id*. The ALJ also relied on the findings of the agency field representative and the consultive examiner, who both found few abnormalities in Middleton's physical and mental health. *Id*. The ALJ observed that Middleton's doctors had "effectively and conservatively" treated both his back pain and his breathing problems. *Id*. at 20.

The ALJ carefully described which evidence she found most credible. She attributed "great weight" to the Dr. Amanda Lange's functional analysis and "considerable weight" to Dr. Rhoads's examination. D.E. 16-1 at 20 (citing *id*. at 90-93, 267-73). She ascribed "only slight weight" to Dr. Robert Hoskins's physical exam because his conclusions were "somewhat contradicted" by Middleton's "conservative treatment record," the assessment by Dr. Rhoads, Middleton's "daily activities," and Dr. Hoskins's own "underwhelming clinical observations." *Id*. The ALJ credited the portions of Dr. Hoskins's report that were "consistent with other diagnostic and treatment records and the opinion of other credible sources," but discounted Dr. Hoskins's findings that appeared to rely solely on Middleton's own subjective reporting. *Id*.

For similar reasons, the ALJ gave little weight to Dr. Greg Dye's opinion on Middleton's ability to work. D.E. 16-1 at 21. Dr. Dye's assessment that Middleton's abilities were "drastically limited," the ALJ found, bore "no rational relationship" to his own treating history. *Id*. The ALJ also noted that Middleton continued to smoke cigarettes "against repeated medical advice"—a habit that, if abandoned, could affect his symptoms. *Id*. at 20.

The ALJ's thorough written decision reflects that the ALJ considered the entire record and explained her reasons for crediting some sources of information over others. Middleton asks

this Court to weigh the evidence differently and to overturn the ALJ's finding that his testimony lacked credibility. But his argument fails to surmount the "substantial evidence" standard.

The ALJ's RFC findings—regarding both the medical evidence and Middleton's credibility as a witness—do not fall outside the "zone" of reasonable conclusions that can be drawn from the available evidence. *See Mullen*, 800 F.2d at 545. Contrary to Middleton's argument, his treating physicians' bleak assessments of his abilities were not "uncontradicted." D.E. 20-1. Nor was Middleton's testimony regarding his symptoms "uncontradicted." *Id*. Nor did the ALJ "fail[] to justify her rational[e]" for dispraising the sources that supported Middleton's disability claim. *Id*. The ALJ did not "selectively include" only the sources that cast Middleton "in [an un]favorable light." *Id*. at 12. She considered the entire record and found that some of the medical opinions were more reliable than others. She specifically identified the sources she found most credible, and explained her reasoning. Because she pointed to findings in the medical records that were inconsistent with the claimant's self-reported limitations, the ALJ's decision was supported by substantial evidence. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) (citing *Rogers*, 486 F.3d at 248). This Court's own review of the records does not compel a different conclusion. Because the ALJ took care to explain her adverse credibility finding and her weighing of the evidence, this Court is not at liberty to effectuate a different result.

### III. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)   Plaintiff's Motion for Summary Judgment (D.E. 20) is **DENIED**;

(2)   Commissioner's Motion for Summary Judgment (D.E. 21) is **GRANTED**;

(3)     **JUDGMENT** will be entered in favor of the Defendant by separate contemporaneous order.

This the 23rd day of November, 2015.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge